The Judges of the United States Court of Appeal. Hear ye, hear ye. The United States Court of Appeal to Justice Perkins is now in session. All persons have been heard before the Honorable Court. From here, give attention and ye shall be heard. Now the State of the United States and the Honorable Court, please be seated. Well, we welcome you today to the United States Court of Appeals for the Sixth Circuit, and we are honored to be invited to Vanderbilt University, and to have the students and the attorneys come to Nashville to argue before a Tennessee panel. Will you call the case? Case number 17-1252, Henry Hill et al. versus Rick Snyder et al. Arguments of the Sixth Circuit exercise. Ms. LaValle, you may proceed to be heard. If you have, if you reserve time, would you please let us know? Have you let the court know? Yes, Your Honor, I have let the court know I have reserved two minutes. And we understand the normal time frame that we use may be inadequate to the issues that need to be covered today, and we will make every effort to provide everyone an opportunity to address all the issues. Thank you, Your Honor, and thank Vanderbilt Law School. They've been very kind in getting us here for this opportunity. Deborah LaValle, on behalf of the plaintiff's appellants, I wanted to take a few moments, Your Honors, to go through the history of this case before we got here today, because I think it has some bearing on the jurisdictional concerns that have been presented to the court. We filed this challenge on behalf of Michigan, on behalf of 263 individuals who were sentenced to life without possibility of parole for offenses they committed as children. Michigan has the second highest in the country, make that the world, in which they have imposed this sentence on children. When we sought this, we filed in 2010, and we sought the court to strike down the parole statute that prohibited any consideration of these children's sentences at any time in their life. It prohibited giving them a second chance or any opportunity to be released from prison. While our case was pending below, the Supreme Court of the United States struck down the mandatory life without parole for children, finding it an Eighth Amendment violation akin to the death penalty. The federal judge below then granted the relief we sought for all 363 youth, arguing that they were all entitled to an opportunity for parole, and ordered defendants to submit a plan for them to have meaningful review, a second chance for them to determine whether they could be released into society based upon their maturation and their growth from the time they committed their offenses. Defendants appealed, arguing that the Miller case, where the Supreme Court struck down mandatory life without parole, should not apply to these 363 plaintiffs in Michigan, because the Miller case should not be applied retroactively, and those individuals who were serving this sentence should continue to serve that sentence until they die. While we were on appeal of that, the Supreme Court then took up the Montgomery case, and the Montgomery case was a question of whether, in fact, Miller should be applied to all youth who were given mandatory life without parole sentences, and Montgomery ruled, the Supreme Court ruled, that it did apply to all youth, and it applied to all youth particularly because it ruled it was a substantive ruling of law, and the reason it was a substantive ruling of law has some deep impact into this case. The court said that it's substantive because categorically you cannot impose this sentence on the vast majority of youth, that the only category of youth who could be sentenced to die without ever being looked at again were those rare, and then later the Supreme Court clarified in Tatum the very rarest of youth serving this sentence. But there's no dispute before this court that that's the case. The Michigan case, the Hyatt case in Michigan, has replicated that argument exactly, so counsel do not stand on opposite sides on that issue, correct? I think that's true, Your Honor, but I think that it's important to understand that when it determined that this should be reserved for the rarest of individuals, and then what happened in Michigan has some bearing on how that has been applied. Ms. O'Byrie, let me just be clear and ask, today as you stand here, you are not asking this court to get into a merits determination, are you? We're looking at whether or not the 12B6 ruling was appropriate or not, and so we're looking at a very narrow question. Obviously, we have to consider some of the things you've mentioned in determining whether or not a motion to dismiss is appropriate, but aren't those the outer parameters of our inquiry today? It is, Your Honor. It is our argument that this court's and the federal court's hands are not tied, and that the jurisdictional dismissal was an error of the court below, dismissing both on Heck and on Younger principles. Okay, and so I know in your brief you said that since the sentence is avoided below, that there is no criminal proceeding, and so Heck should not rather bar this. You know, with regard, we have three challenges to the statute, Your Honor. With regard to our challenge that life without parole, which this challenge has been going on for seven years now, that life without parole in Michigan should be constitutionally forbidden for Michigan children. With regard to that, there is no Heck problem. We are not challenging the conviction for people convicted of first degree homicide. We are not challenging their sentence because none of them, none of the 363 have been resentenced to a life without parole. But the Supreme Court did not say it was constitutionally prohibited. Didn't they say except for in the rarest of cases? So that's not an absolute prohibition, is it? No, and we're not arguing that the Supreme Court has made an absolute prohibition. What we are arguing is that we should be able to get to the merits of our challenge. The Supreme Court specifically said in Miller, we're not addressing the categorical bar in this case. We're not addressing it because we can resolve it by saying the rarest of the rare. Our argument is that we should be able to go back now, which is five years post-Miller, and demonstrate to the court that this sentence, and especially this sentence in Michigan, which a third of the children neither committed a homicide nor intended, where it goes back to 14-year-olds, that this sentence has become cruel and extremely unusual since Miller decided this case. Aren't you seeking a reduction in the sentence? A lowering of the sentence for these children who were juveniles when they were sentenced? No, Your Honor. You're not seeking to reduce their sentences? No, because they have no sentence. We are in the extraordinary position. They have convictions. They have convictions, which we're not challenging. And I know the Supreme Court opinion, both opinions, Montgomery and Miller, the result there, they were both habeas cases, as I remember. That's correct. To reduce and allow the states to bring these children back before court and reduce their sentences considerably. That's correct, but both Miller and Montgomery had a sentence of life without parole. There are almost 250 youth in Michigan who have no sentence, and their prior life without parole has been vacated. The state has said, we're going to, we intend to try to enforce a life without parole sentence for you in the future. But they do not have a sentence. It's a prospective sentence, and what we're saying is, heck only comes into play if we're challenging a conviction or sentence. They have no sentence, isn't it? Your argument is under count, too. Correct. Pardon? Your argument is under count, too. Yes, that's correct. I'm struggling with that count because it seems to me that the situation in which we find ourselves, though the sentencing is delayed, it is in fact inevitable. And so in that circumstance, why shouldn't that particular count be barred by heck because you have the right on direct appeal to raise all those constitutional challenges following the inevitable resentencing? So I don't think it's a, with all due respect, Your Honor, I don't think it's a heck question because there's neither a sentence nor conviction that we're challenging. But why isn't it, I'm struggling with why it isn't a sentence if in fact there is a pending and inevitable resentencing that will occur. There's been a long delay here, but that's not so unusual to have someone who has appealed some portion of a sentence, an enhancement, some other incorrect determination by the court, which has been found while they are in jail to be incorrect, and a resentencing is ordered. Why is that different? Because those people as well as these youth would then be able on direct appeal of that resentencing to raise those challenges. So the reason why I think that, and I want to circle back to that, I think that what the court is talking is about either a younger or ripeness problem because we are not, although it's inevitable at some point that they will be resentenced. And we know that almost 250, the state is seeking to reimpose a life without full sentence. But we don't know whether they will get that sentence or not, of course. We're not challenging a sentence because there is no sentence to challenge. And it is extraordinary. I can't think of any other situation where people have served literally decades of what is now an unconstitutional sentence and now are convicted and are sitting for years in a prison with no sentence and with no date of a future resentencing, Your Honor. And I try to think of analogies. They're going to be brought back before the courts of measurement, I take it, by the prosecutors in each county where they were first convicted. And they're going to have the opportunity to have their sentences reduced considerably. Isn't that what's going to happen? What is going to happen? That's not going to happen?  And the problem here is since this case has started seven years ago, many people have died serving an unconstitutional sentence. And if they have to wait until, if this court says, we're going to hold our hands and not allow you to go forward and just simply have a determination of whether ELWOP is a constitutional or unconstitutional sentence under the federal law, but we're going to require you to go the nine or ten years it would take individually for you all to do a habeas after some date in the future, which may be years that you're going to be resentenced, they won't make it, Your Honor. What kind of injunction do you want us to issue against the state here? We're not asking for an injunction. We're asking for a remand for the federal court to make a determination as to whether a life without parole sentence is unconstitutional categorically at this time, given the evolving standards of decency, given the way it's imposed in Michigan on children who neither. But that is contrary to the Supreme Court's opinion in Miller and in Montgomery that they're to be resentenced. Well, I think it's not contrary. The court in Miller and Montgomery said we're not addressing the categorical bar at this time. It's not contrary to the decision, but we are now five years down the line from Miller, and in fact the dissent in Miller anticipated. It said you're going to make this unusual, and then the next challenge is going to be a categorical bar. The reason it becomes so urgent in Michigan. So what do you want us to do? You don't want any injunction? No, I don't believe there will be any proceedings in Michigan for some time to come against these individuals. So what kind of judgment do you want us to enter? If the court remanded this matter for a determination of a constitutional issue, is life without parole unconstitutional in Michigan? There are no proceedings ongoing. Per se? Per se, categorically. If we lose that, then down the line, two, three years from now, people will potentially begin to be resentenced for under the flip that this state has done. They have said, you know, we're not going to go after the rarest. In the face of a Supreme Court opinion that says to the contrary that in rare cases, but in some cases, life without parole is justified, and we are governed by the Supreme Court's opinion whether we like it or not. I would agree with Judge Merritt because this is about, let me say you want us to remand it for Michigan to make that determination, and the Supreme Court, which has spoken to the issue, and has left in there a slice of cases where life without parole for a juvenile could very well be constitutional. So if we, it seems like in this instance, a remand would serve no meaningful purpose under the parameters that you have established. Well, Judge Donnell, what I think has happened is that the court, the court was very explicit in the law. It says we are not addressing the categorical bar at this time. They didn't say because of what we're doing here that we think doing the rarest person, we're not going to address, and those arguments were in front of them, and they did not address it. But we are five years down the line. We now have 39 cases. Here's the concern for me. I don't think there's any question that that issue has to be taken up, and ultimately taken up by the Supreme Court. The issue of what constitutes the rarest of the rare? The issue of whether there could be a categorical bar. That is an unanswered question, so it is available for you to argue. Yes. The question is when and how. The issue here is unusual because you have this long delay, but I looked very carefully. This is not a bar to bringing those up. All of these cases that have not continued with the 250 life without parole, those courts have individually stayed their case pending the Michigan Supreme Court's determination of Skinner and Hyatt. That is now to be argued in October. I don't dispute with you that it's been an unreasonable delay, but they are to be argued. So what I'm trying to understand is what makes your case necessitate an immediate remand when on direct appeal following the resentencing, those constitutional issues can and should be raised and work their way up through the system. I think because there are two things. Again, I've said it and I will be brief. I don't think it's a heck or a younger issue. We filed this case seven years ago making this challenge, and there are no state proceedings ongoing with regard to this issue now. I think it's a ripeness issue, Your Honor. I really do. Let's stop just a minute. The reason there is nothing ongoing particularly is because the Supreme Court of Michigan has got before it and apparently is going to be argued the question of whether when it comes into the Michigan courts, the accused or the juvenile is entitled to a jury trial. Correct. Do you have a position about that? I have a position that it's probably likely that it's a jury trial, but we have no idea what the court's going to argue. You're in favor of a jury trial. I am under the law, Your Honor. Well, that's what they're going to decide, and that arises under the Rangley, Arizona case and a whole bunch of cases. But that's a legitimate issue for them to decide. In fact, you agree apparently that Rang applies here and they're entitled to a trial by jury. So I don't understand why you don't want that to be decided and why that's not pertinent to the way it will be handled in the Michigan courts. Because for seven years we have brought the issue that a categorical bar of LWAP, that LWAP is simply unconstitutional in Michigan. For seven years we've been delayed while defendants have fought this up and down, and now we are in a situation where literally almost 250 people have been and will be for at least another year or two or three stuck in a limbo in which they have been serving a life without parole that's been voided. Let me ask you this question. If we don't agree with you that it is per se unconstitutional under the Eighth Amendment, then what should we do? So I actually think it's premature. I think it should be remanded for that determination, and I don't think that we should have to wait ten years more. And the reason why this is so unusual is we have 17 people who have served over 40 years of an unconstitutional sentence. They will not make it through a habeas trial, and they won't make it. They'll die serving an unconstitutional sentence, maybe without even being resentenced. And all of the concerns about heck and habeas and younger are about judicial efficiency, are about duplication, about not interfering with state. It's not federalism. It's the right of the state to resolve its own issues. It's true, but we filed this case seven years ago before any of these proceedings, and this state, which led the amicus briefs against Miller, which led the amicus briefs against Montgomery, who then, after this court remanded, put into a statute in between conviction and sentencing and a brand-new statute saying this is what we're going to do, and we're going to go after almost 70% of you again for life without parole, where this court's hands are not tied by the procedures, and we're talking about significant injustice going on. What harm is it for having the court decide? If the court goes back down and says, you know, you're right, the evolving standard of decency and the way it is in Michigan, it's unconstitutional to go life without parole, then all these people, some of whom have already served the mandatory minimum of 40 years, will have an opportunity before they die to go and say, listen, I've been rehabilitated. I did this when I was 14. Look at me. And if this court holds its hands, that won't happen. It simply won't happen. And all we're asking is there any analogy, any case authority that you could give us that would show where the dividing line would be on time, because what you're asking us to do is to say that because there has been such an unreasonable delay, and we are in this situation with people who have served the minimum but not the mandatory maximum, which is 60 years, then their cases should be heard now, in light of the fact that if they are resentenced in due course, following that resentencing, all 250 on direct appeal could raise the very issues that you are raising. What authority do we have to do that? And I'm sure the court knows that that will take many years. We haven't even... It will take. Many, many years. You have, you know, the 73 or 78 have already been resentenced, only those people who were not resentenced with a request for life without parole. That leaves 250. You've got the issue of how in the world can that be the rarest when it's 70% of the class. We all understand that. But those issues have to be... We have to have a pattern or an authority or a reasonable basis for selecting a time frame after which the normal course of proceedings should no longer continue. I agree with you. There is a time period at which you ought to say to a state, enough is enough. But there has to be some sort of basis for making that determination. And I'm struggling with Skinner and Hyatt coming up before the Michigan Supreme Court in October. When they render a judgment, those 250 who have already been specified by prosecutors for life without parole, they're going to start having their sentencing because a number of the 78 have already had theirs. So with all due respect, I mean, it is given our courts and their process, I think it's fair to say there will not be a decision until the end of the term in July. I think that it is fair to say that whatever happens, it will go up on appeal to the... The prosecutors are challenging the standards and the standards of the jury. So nothing is going to happen in those cases for a couple of... We'll have to wait and see. The retroactivity, which included then Michigan, only occurred, what, a year ago or less than a year ago, wasn't it? That's correct. Over a year ago, yes. When you talk about a long period of time, the law changed, but only a year ago. And so we're going to have to go through a process of acclimating ourselves to a new law. And when you talk about timing, there doesn't seem to be any bad faith delay in proceeding when the Supreme Court opinion, which became retroactive less than a year ago, is being followed. Well, I would note, and to respond to Judge Stranch's things with regard to time, I do think that there are some principles both in Younger and in Ripeness and in Heck that are helpful here. And the question is, are people... Has there been bad faith? Is there irreparable harm happening? And I can't think of another situation where someone could have served 40 years of an unconstituted sentence as a child and simply won't make it, Your Honor. No one in the state of Michigan coming in as a child has ever made it 60 years. We have 48 people who have died already. I wanted to ask you another question. On the people who are going to be coming up and being evaluated, as you just mentioned, have the standards or the criteria for aggravators and mitigators been set out under this new statute? Have they yet been articulated or determined by the... No, Your Honor. I mean, as applied, one of the things we do know, and it's not our class of the 363 who are post-Montgomery, but we do know, for example, that post-Miller, there were 33 individuals who are on a direct appeal or convicted after Miller. Over half of them have gotten life without parole in Michigan again, over half. Those are all on appeal. And the aggravating standard issue is chaotic, to say the least. I mean, aggravating standards, judges have found it aggravating that you're 17 1⁄2. Judges have found it aggravating that you've had a child out of wedlock, life without parole. So we have chaos down there, and we have, I think, a great deal of bad faith in imposing this statute in between, while this court was on appeal, in between conviction and sentencing, that allows them to go after not the rarest, but the vast majority, and hold them in a very painful limbo, and facing a sentence that we believe is highly unconstitutional at this time. Well, that's why the case was remanded. Pardon? The case was remanded to this court so that you would have the opportunity to amend your complaint and explain your claims under this newly enacted statute. Correct. So if that's the case, I absolutely am on board with there being a problem here with the timing. There is a problem with the timing. But the question becomes, where lies the remedy, and how is that remedy effectuated? If, in fact, they are pending resentencing, and now the resentencing is beginning to occur, and you have 250 out of 363, and the first 100 of them are all given a sentence of life without parole, in fact, doesn't that give you the statistical proof, not the fact that it's been requested by a prosecutor, but the fact that it has been imposed by a judge or a jury? Isn't that the proof that you are seeking in order to make your argument under Miller, Montgomery, and Hyatt, that this is not the rarest of the rare, that, in fact, Michigan is acting unconstitutionally? I think that that's an applied challenge, but I think, Your Honor, with 39 states now, 17 since Miller, having either legislatively or legally by judicial fiat gotten rid of life without parole, that it is highly unusual now that I think that even if we were allowed, if this court remanded and kept jurisdiction and just told the federal court, decide whether under the evolving standards of decency in the Eighth Amendment, whether there is now a basis to make a determination that LWOP in Michigan is unconstitutional. But don't you think at the same time your remaining three counts, four, five, and six, are significant to the effectuation of that process? Because they, in fact, seek to clean up or resolve improprieties in the parole system itself. You know, the court has been very indulgent, and with a little bit more indulgence, I would like to pivot. I would like you to address those claims. You know, one of the claims that the other, there are two other claims that I wanted to highlight that we raised in our amended complaint. And one was with regard to the fact that they have not changed the parole process for Michigan youth. So that, you know, if you don't go the life, if you aren't in the 250 that they're going after for life without parole, then you get a term of years of 25 to 40 on the minimum and 60 on the maximum. As I've indicated, no one's made 60. And it's a mandatory 60. It's a mandatory. It's not individualized. It's mandatory. And it's de facto life without parole. So our argument was that you have to, and in issuing those sentences, the court has taken a position that if you're not facing life without parole, we don't have to consider any Miller factors whatsoever. There's no guidelines. There are no nothing. It's the Wild West down there. So they're issuing 40 to 60-year sentences. The parole board has no specific guidelines. They're processing them without Miller consideration, as if they're adults. So now we're getting resentenced after serving an unconstitutional sentence, and there's no consideration of your child's status or intended characteristics in either the resentencing or in the parole process. And did you say at that resentencing that if they had heretofore earned good time or disciplinary credit, there was no consideration or no credit for that, so the sentence is then kind of being extended. Is that right? Right. And in coming down and being forced, and believe me, they felt forced to do this for Montgomery and Miller. There's a particular addictive little codicil about the good time and the disciplinary credit. And that's your ex post facto. That's the ex post facto argument, that all of these individuals, and the statutes are very clear that even if you had a first-degree homicide conviction, you earned good time and you earned disciplinary credit if you had exemplary service. Our brief speaks to Moore v. Parole Board in which the Michigan Supreme Court says, listen, we know that it was a hope in the future that you would get resentenced to a term of years so it would be applied. I think your sentence previously was life without parole in all cases of homicides. Where can you find good time credits? Because it would seem to me the statute itself that created that system, which is now unconstitutional, but it didn't permit good time credits. It was an absolute term there. So where do the good time credits come in? Actually, they did permit it. And as I noted in the Supreme Court in Moore, they said, listen, hope and post-conviction please spring eternal. And good time credit is some encouragement, at least the legislature thought so, in providing these credits in case you might ever be able to apply them. The legislature decided that, listen, we're going to encourage you to be good because we know people get resentenced. We know a term of years could come. And if that happens, and the legislature didn't put in a subsection 6 because you weren't entitled to it. When was that legislation adopted? That legislation was adopted in 1967, and it changed throughout the years. But it most recently disciplinary credits in the 80s and 90s. It continued to say explicitly we give it to people with first-degree sentences, even though we know that they can't apply it now. But Weaver tells us it doesn't have to be vested in order for it to be an ex post facto violation. The legislature put it in because they knew that people were entitled to it. They didn't make a nonsensical section and say we're going to take it away. They said you can keep your earned time. I mean, you can keep the time you spent in there. And it would have been no less an ex post facto if they'd taken away the time served. They say, well, credit your time served. But for you good ones, you ones that had no hope but still were really good and earned this credit, you can't have it applied in order to come before the parole board at a lesser time. And we have some really real pain about that. Jennifer Pruitt, one of the main plaintiffs here, she got a sentence in which she's already served over 25 years. She has a sentence that she can't go to the parole board for seven more years. But with her good time credit, because she's an exemplary prisoner, she could go next. She doesn't get out necessarily, but she can go next. These cases are proceeding like her case, I take it. For term of years cases, yes, Your Honor. How many of them are proceeding? I know you don't have all the plaintiffs, but how many of them are proceeding forward? For term of years, there have been 95 people resentenced to term of years sentences. None of them, all of them, have been denied their disciplinary and good time credits. We have neither a heck nor a younger problem there. We're not seeking release. It's just the opportunity to go earlier before the parole board, to have the parole board decide that you can go home. So you want a Wilkinson and Warsh remedy? I actually think that I do, and I want the reversal there. I think it's a clear ex post facto violation, Your Honor. Is this being raised in the court system in Michigan on appeal? Not that I'm aware of, Your Honor. Why not? I think because we had it in this case, and we filed a federal challenge immediately after when the court remanded to attack this statute. People are hopeful. Do you have any further comments you would like to make on count 4, 5, and 6? On count 4, Your Honor? No, 4, 5, and 6, which are the challenges that fall under heck and younger and fall under Warsh and Wilkinson. Well, I do think that our challenges to the parole statutes, again, and to the denial of parole are all Warsh claims. We're only seeking an opportunity. There is no problem with heck in terms of a shortened sentence being necessarily occurring. This case has always been, Your Honor, all about opportunity. All that opportunity for the procedural possibility to be heard by a board with discretion. Correct, Your Honor. Which is the Wilkinson-Warsh line of cases. Yes, Your Honor. Isabelle, you know, I really ask you to be really brief on this, but I need to go back to count 1 again, because it seems to me that any re-sentencing of the plaintiffs is going to occur under a new statutory provision. The statute of issue is no longer applicable. So if that's the case, how can count 1 be considered a CLB law? I mean, doesn't it have to be dismissed as moot? Yes. And I'd like your most succinct answer possible to that. I think that there's a concern there that's legitimate, Your Honor. There's a what now? I think there's a legitimate concern there, Your Honor. The statutes are a little odd in that it's still in place, but now instead of a life sentence they have a life without parole sentence. So there is a question as to whether that statute is still applicable. Okay. Are there further questions?  Thank you, Ms. Lyle. Thank you, Your Honor. Good afternoon. May it please the court, Eric Costuccio from the Attorney General's Office on behalf of the State Defendants. With me at council table is Kate Dalzell. I want to thank the court and the clerk's office and also Vanderbilt Law School for hosting. I think it really is very gracious. They have been just wonderful to interact with, Your Honor. It's my first time in Nashville, so it's obviously a city of music. You want to go to the Grand Ole Opry? I think the short answer for the court is that this court should affirm based on procedural principles, abstention and heck, that when, Judge, you said when and how are the important questions. Those really are the important questions. This is really an issue before the court about federalism and an opportunity for the state courts to address the issue. Well, doesn't the case law say that even in federalism, bowing to giving the state the right to begin its own proceedings, where a case has been filed in the federal court and proceedings have been undertaken, then the value of federalism counsels us to continue and to resolve it in the federal system. I think that's one of the important pieces of this case. In fact, I want to do a little bit of background, backfill a little bit of the description given by plaintiff's counsel because I even have additional information about what's been happening with these cases. I want to answer that question directly. In my view, I think Judge O'Meara hit the nail on the head when he said this is essentially a new case. I want to explain that. Other than Count 1, which has been mooted because the statute of issue raised in the first complaint from December 2010 was 791-234-6, which is a parole provision. And the parole provision is no longer at issue. The statute provided that those sentenced to life would not be eligible for parole. That statute is no longer at issue. So, stepping back to kind of give you a little bit of information. And hopefully, as you step back and give us that other information, you're going to tell us how 70% of the class can be the rarest of the rare. All right, I'll jump in on that for you, Ron. But, so there are two classes of offenders really kind of in play. You have those who are subject to life without parole motions, and that's approximately 250. And there are those for whom the prosecutor did not take life without parole, and that's approximately 100. And that interplays with the plaintiffs here. There are three plaintiffs who are then subject to life without parole motion. And there are ten for whom the prosecutors did not seek life without parole. Seven have been resentenced of the ten. Two of those seven have been paroled. Mr. Hines and Mr. Hill, Mr. Hill's date will be as of October 31st. I mean, you have two plaintiffs essentially who claim. I don't think anybody disputes that there are individuals from this named group of plaintiffs and individuals within the class that fall within each category. The question is, how do you treat, for example, the 250? Why don't you move on? I'll zero in on that, but I want to give you one more piece of fact about the term of your sentences because the newest information is of the 97 who have been resentenced, of the 97 who have been resentenced, 39 have gone through the parole process. They've served their minimum term. And of the 39 who have gone through the parole process, 36 have been paroled. Ninety percent of those in Michigan who have gone through the parole process who had a term of years sentence have been paroled, more than 90%. So I think you have to keep that in mind with respect to the term of years claims about the inadequacy of the parole process and whether it's been a meaningful opportunity for release when 90% of the class that they're talking about have actually been paroled. No, I would have to push back a little on that. Ninety percent of those that you determined you would not seek life without parole through because you determined as a state that 250 or 70% of that class should be back up again for life without parole. You're exactly right. I was trying to zero in on that other class. Zero in on why this is a new claim when it was filed in 2010 and when we heard the case before, we remanded it with an express direction to allow the plaintiffs to amend the complaint and to place evidence in the record on the current legal landscape. Very good. How does that create a new case? The original complaint was based on a parole claim. The suggestion was that these offenders should be eligible for parole and one of the reasons they were able to survive the Hecht v. Humphrey motion from the state is they said we're not trying to challenge a sentence. We're just challenging the parole process. We think these offenders should be considered for parole. That was it. The 791-234-6 statute was unconstitutional. Well, come June of 2016, now the complaint's filed. It's no longer a challenge to the parole process statute. It's now a challenge in two ways. One, it says life without parole should be categorically barred. That's a direct challenge to the sentencing scheme and the sentence that will be available for the state to impose. That's why it implicates both Hecht and it implicates Younger in abstention because all of these claims can be raised on direct review. There will be parallel proceedings. One of the primary considerations of Younger and Hecht is to avoid friction between the jurisdictions, between the state courts and the federal courts, and, in fact, the Pruitt case is pending in the Court of Appeals. The Tasker case is pending in the Court of Appeals. Mr. Tillman made a sentence agreement. It took 32 1⁄2 to 60 years with a sentence agreement with the prosecution, and then in his Court of Appeals action raised the ex post facto, and the Michigan Court of Appeals ruled in that case on the ex post facto said that he had waived the claim because he entered into a sentence agreement. In other words, these issues are right now percolating through the state courts at the same time that this federal court case is pending. So coming back to 250, the reason for the fact that those sentences have not gone forward yet is because the Hyde and Skinner case is set for October 12th, and the claim being pushed forward by the criminal defendants is that they should have a jury trial right. That is a huge threshold question and one in which the defendants are seeking really a much broader... Nobody disputes that, but the issue that we are discussing is how this is a new claim, and I'm struggling. You cite no case law that says that an amendment to a complaint creates a new claim, a new complaint, for purposes of a HEC analysis or a younger analysis. I'm not seeing any authority that supports your position that we have to take each complaint as it is amended apart and then determine whether HEC is now implicated when we've already determined that the complaint and the ongoing proceedings are not subject to HEC. The language comes from HECS, 422 U.S. 332, with the United States Supreme Court case, which talks about kind of the timing. It said that in fact the state proceeding could be second in time. The critical question is whether there have been any proceedings of substance on the merits. But your argument, I think, sort of defies logic because if you file a complaint and that case is subsequently amended, if the amendment represents a new complaint, you could end up facing a statute of limitations bar because the rules talk about relation back, and so how could it be that the amendment itself would constitute a distinctly new complaint? I think the question about the relation back doctrine as opposed to the younger principles are distinct. Of course they are. But you're talking about, in this amendment, it made a new complaint. And I know in your brief you talked about, well, there were other defendants added, the attorney general. And I have just not heard what I believe is a persuasive argument  and why we measure time from the amendment rather than from the original complaint. That's what I haven't heard. The merits of this June 2016 complaint is now a sentencing challenge. It's no longer a parole statute challenge. It's now directly challenging Michigan's statutory remedy that came in response to the decisions in Miller and Montgomery. In fact, Montgomery kind of provided guidance on this issue where the court said that it was careful to limit the scope of any attendant procedural requirements to avoid intruding more than necessary upon the state's sovereign administration of their criminal justice system. There are no other cases. If you do a search of all these cases that are being litigated on Miller and Montgomery, you will not find a 1983 case. They are all habeas cases and direct review cases. The very kinds of claims that are being raised here, whether for a categorical bar with respect to life without parole or a challenge... I'm struggling with your answer because I think it begs the question. The question is, what authority do you have for saying that a complaint filed in 2010 must be re-evaluated when there's an express authorization and remand authorizing the complaint to be amended to address the new legal setting? I'm really struggling with the lack of clarity of a rule that you propose because what it would say to every court is, yes, we've always looked at these doctrines in the context of when the complaint was filed. That's what all the cases say. We look at when the complaint was filed. And now you want to say to us, no, scrap that. Every time the complaint is amended, you must now take it up again and consider whether the Heck or Younger doctrines begin their application at the amendment. That just sounds like a morass to me. The Heck case and the Doran below it are evaluating the question of timing. And the answer was, it's not strictly when the complaint was filed. The legal standard that's at issue is proceedings of substance on the merits. That's the standard for Younger. And the question is, have there been any proceedings of substance on the merits? And the only count for which there was proceedings of substance on the merits in the new complaint related to the first count, which has been mooted. So my question to you is, how does the court's directive that the parties be permitted to amend their complaints, how does that impact your Younger analysis? Because the court in its order said that the plaintiffs should be authorized and permitted to amend the complaint. How does that factor in that in the Younger analysis? It seems to me that the court here was providing the opportunity to see if there was still an opportunity to go forward. And it didn't. In fact, in that case, the state had briefed fully the Heck issue before that court, and the court didn't answer the issue on Heck. And, of course, the Heck claim here is much stronger because previously the original complaint was challenging a parole statute. Now the plaintiffs are challenging Michigan's sentencing statute. So the point is, as Judge O'Meara said in his decision below, there have been no decisions on the merits of their claims so far in the proceeding. So, consequently, the abstention doctrine applies because all of the claims that are being raised in the action here can be raised on direct review. All the cases that are pending, and those cases were reopened in February of 2016, five months before the second amended complaint was filed. The activity has been ongoing in this case. I guess what I'm struggling with, Counselor, is that the argument that you have on why we have to wait, why the Count 1 is moot or Count 2 should be dismissed under Heck and Younger, is that even if it's slow, we are actually fairly proceeding. We are taking things in order and doing it. And now when the federal court says to you, even if proceedings are slow, we as a federal court have undertaken the adjudication of this case and have made progress along the way. It feels like you want us to grant you time and you don't want to grant us any time. Really the question is, who should be answering these questions in the first instance? If you look at Graham said, in the first instance, these are issues for the state. Miller said it and Montgomery has said it. These are questions for the state courts. All these constitutional claims can be raised in state court and they will be. I don't think there's a dispute about that. The problem is we're arguing that both for the continued application, both for Count 1 and 2, which we've discussed at length already, but also for Counts 4, 5, and 6, which in fact have precedential support in citing and allowing for a 1983 claim for the challenges that are before us. Do you disagree? Yes, for 4, 5, and 6, the strongest claim for the state is the under abstention and also the merits. Once you see that there have been such a huge number of parole grants for the people who have had access to that process, it impeaches the claim that the parole process is inadequate. Unless you are focusing in on the minimum sentence and the maximum sentence, but of course that's one that challenges the ultimate duration and would then implicate, arguably, heck. Not if what you're challenging is the duration as it applies to these individuals' rights to come before the parole board sooner and ask that parole board to exercise its discretion on their behalf. That's worse, which you did not address. No, that's true. That's why I think in a way for us, the stronger point is, rather than heck, is younger because these claims can all be raised in state court insofar as you are arguing that you have a de facto life sentence. In fact, we were required to respond to the United States Supreme Court out of a Genesee case where someone made the argument in a habeas case, again, a 1983 action where they claimed that they had a de facto life sentence. Of course, the gateway is if it is a de facto life sentence, that's the opportunity then to address the parole process. But the threshold question is one that can be raised in state court and is pending in these cases as these different specific plaintiffs can raise their own individual claims. But why shouldn't this group of plaintiffs, under the clear authority of Wilkinson, United States Supreme Court, and Wersch, 2014 Sixth Circuit case, be able to process the complaints about the way the structural system functions for the parole board because you're asking that these people all go through the parole board on a system that your opposing counsel tells us is improper. And so then what they would have to do would then go up on appeal and say, what you have done to me, the way it's functioned is inappropriate. When there is presidential authority in this circuit and from the United States Supreme Court that would say that is a case that is not barred by the habeas bar. It can be brought under 1983. The way Wersch is distinguishable is that there was no pending state case for Mr. Wersch at the time in which he filed his 1983 action. So you're providing a heck analysis to me and I'm giving you a younger response, which is... But my response, my question on younger has to do with when, where you look under our jurisdiction and under our jurisdiction you look to the filing of the complaint. Right, and I'm responding that the filing of the complaint is not the timing and as the United States Supreme Court says, the timing isn't who filed the complaint first. The question is, when has there been proceedings on the substance of the merits? And my response is that on the case pending since 2010, there have been proceedings on the merit. For example, the count one was found by the district court not to be a heck problem. It came up, legal landscape had changed, it was sent back down and remanded to allow these plaintiffs to continue the existing litigation. We're not relying on younger for count one. I think count one is just a straight... It's just moot. Straight moot is plain. The younger relates to counts two and four. And the reason that this is a new complaint for which there is no development on the merits is that the challenge relates to Michigan's statutory fix. The statutory fix passes in March of 2014. We have 76925 and 76925A. One is for the Miller offenders, one is for the Montgomery offenders. It's an entirely new regime, one that creates a 25 to 40 minimum sentence... But it's an entirely new regime in response to Michigan attempting to fit itself within the parameters of Supreme Court jurisprudence on the very issue that is before this court. That's the issue that began this case and has proceeded throughout. Yes, the legal landscape has changed without question. But the only basis on which they could bring the challenge in the first instance is because they were challenging the parole statute which didn't allow offenders to be parole eligible if they received a life sentence. None of these offenders will see a parolable life sentence. They will either get life without parole or they have a term of year sentence. That is the belief they were seeking was essentially to create a parolable life sentence. Nobody in Michigan will have a parolable life sentence at the end of this scheme. The legislature created two possibilities, terms of years or life without parole. The only circumstance in which the parole board would have authority would be after a term of years sentence. So the statute that they were challenging, which foreclosed life sentences from being eligible for parole, is not applicable at all. It is now an entirely new challenge to the parole process that's predicated on the 60-year maximum being a de facto life sentence, which of course has been impeached by the facts on the ground in which the offenders who have served their minimum sentence... That's my problem with it. That's the mayor's answer. I'm sorry. I'm sorry, Gil. My thought about this case may be wrong, but this became a new case when the Supreme Court in Montgomery decided that Miller is retroactive and applies to, by its nature, Michigan. When that happened, this court wrote an opinion, remanded it, and the reason as far as I know we did that is because of the Montgomery case. It's sent back to the district court to look at it under a new landscape or a new case, new situation, and is that the way you look at it? Yes, Your Honor. So the result is what? The result is that this case was properly dismissed and the opportunity to then go forward with these claims occurs in state court because the challenges here are all new. They relate to Michigan's statutory scheme. The only existing challenge for which there was development on the merits was the first claim, and of course that claim is mooted because the statute being challenged is no longer applicable to any of these offenders. So the insight is that Montgomery changed the landscape and required when they filed their amended complaint to bring new challenges. Then for Montgomery, we wouldn't be here, basically. That's exactly right, but the whole matter changed, and that's why now they never saw a bar of life without parole before because of course that would have been barred by heck, and the only reason that they're now trying to sneak into this window, not sneak, there's nothing nefarious about this. The plaintiffs have nothing but considerations of justice underlying their claim. The state understands that. The question, though, really is broadly reviewed. I mean, I made my point about the proceedings of substance of merits. I think that's the right legal answer. If you step back and look at this from a broader, what's going on here really is a question of federalism. The state courts are equally capable of addressing these constitutional claims, and there will be a basis for relief. If you remand and ask the district court to evaluate the constitutionality and then there will be a class certification, and of course the class certification request will then have specific plaintiffs who will have gotten contrary results in the state courts. It will create the very friction that abstention and heck are designed to foreclose. These plaintiffs will not lose their opportunity to raise all of the arguments that they're currently raising here. They can raise them all through the state process, and the claims that they are raising are all arising out of their June 2016 complaint, which were not present in the February 2012 complaint nor in the December 2010 complaint. Judge O'Meara had provided essentially a special master and was prepared to rework Michigan's parole process back in December of 2013, so he was sympathetic to the claims before him in drawing a decision, but he recognized that none of the arguments advanced other than count one presented existing claims. They were new substance claims requiring new substance analysis in which there were pending cases in the state courts where all of those claims could be advanced and litigated. A remand would be contrary to the very principles of abstention and heck because it creates the very friction that those cases are designed. So you say that remand would not be appropriate as to any of the counts in the complaint? No, because even the claim with respect to the term of years offenders is new because what they're arguing now, which was not present before, is that the 25 to 40 to 60 year sentence is a de facto life sentence. I dispute it as a factual matter on the merits, but separate from the merits of it. It is a new claim because previously the claim was that the statute, parole provision that said those who get a life sentence are not going to be eligible for parole, that was what was at issue. Where does that leave us with our jurisprudence that has sought to create some generally bright line rule by which we could determine when heck or younger begins to apply? And that is our case law specifically says it is the filing of the complaint on the younger issue that sets that. I dispute that. You're asking us to, well, you haven't given me a case. Given me a case with some policy discussion in it, but you have not given me a case that says we are going to, as a court, from now on prospectively going to say generally we'll look at the first filing of the complaint, but now we are also going to look at every amendment. To me, that creates the kind of rule that creates judicial chaos because then won't every plaintiff have to say, do I want to amend my complaint? Because if I amend my complaint, I might find myself back in younger land when I am not because of when it was filed and the progress that has been made. I love clean rules, too. I know exactly what you're saying. I think applicability matters, but the very point you're making when you say that the rule has been the filing date is the controlling date, that's not the rule of law. In fact, I'll give you the quote from Hicks because this very point was kind of discussed in the United States Supreme Court, the very dynamic you're talking about right now, and the ultimate rule wasn't filing date but proceedings of substance on the merits. So here's the quote. Neither Steffel, and this is from Hicks, 422 U.S. 332 at 329 and 350. Neither Steffel nor any other case in this court has held that for younger to apply to state criminal proceedings must be pending on the day the federal case is filed. Because then what is happening, and I'm familiar with that. That tells you that you can't know the date by looking at what's been filed first. It doesn't tell you, however, whether filing a new complaint becomes the bar which you say. I think you and I may just disagree on that because it does look to whether merits have been ongoing in the state court, but the cases also say if the federal court has engaged in determinations and undertaken the litigation of this case, then federalism on the federal side suggests that the federal court should continue to completion. Well, then ultimately it's not a disagreement about what the standard is. It's a question of whether it applies here. In other words, I think Judge O'Meara is right that there have been no proceedings on the merits of the complaint. Now, if you don't agree, that's just, we have the same standard. The way the question was asked, it was suggesting to me that we were arguing different standards. I think we have the same standard. I think the right answer is here that there have been no proceedings of substance on the merits. That's what Judge O'Meara said. I think it's exactly right. If you look at these two complaints, they're predicated on fundamentally different legal theories. Very different in kind. And the very legal theories that they're raising all respond to Montgomery and the new statutory fix. There are no other cases throughout the country of 1983 cases. Just this one. This one stands alone. But it stands on the shoulders of Wilkinson and Warsh. Because that's a heck point. This is a younger point. I'm arguing younger on this angle, which is on the substance of the claim regarding the terms of years offenders, they have raised essentially a new claim on cases that are pending. And in the suggestion of slowness, since the term of years offenders have moved through, we've had essentially 100 sentencing since August of 2016. So those cases have moved along. This idea of delay. But the 250 are totally and completely true. You're now moving back to the first group. Your point to me about the Warsh and Wilkinson lines, about count four. Not about count two. It's about count four. Because it's clear. It seems to me hard to fashion an argument that says that somehow this bar, seeking a bar of life without parole was present in the first complaint. Because, of course, it could never be advanced without having to run past heck. The way that counts three, four, five, and six try to escape heck is by demonstrating that they're not going to necessarily obtain their parole release. The response is not relying on, because we have Warsh, right? But the younger analysis remains the same, which is these cases are pending. Warsh had no case pending. There are cases pending for all of these offenders. In fact, not just pending. They're moving along. The train is going along the station. In fact, all I know there are cases where they raise these exact arguments because there have been 97 sentencing. I don't know what all those appeals look like. They can take appeals from all of those sentences. I have no idea what all the plaintiffs in this case. The Attorney General's Office doesn't have anything to do with the trial of these cases. It's the EPA. We have three cases in which we were the originating prosecuting agency. So that's our jurisdiction. We have three cases. There are 363 roughly. The rest of them are brought by local prosecutors. That's exactly right. In different counties throughout Michigan. That's right. The 83 counties, each of the prosecutors makes those decisions independently. My point to you, though, is that even the claim regarding the term of years offenders are offering a new substantive analysis, and that's why Judge O'Meara can accurately say there have been no proceedings of substance on the merits of the claim because nothing related to a 25 to 40 to 60-year sentence under 769.25 or 25A previously was a challenge to a parole statute. It is night and day because the predicate of the claim is that a 60-year sentence is a de facto life sentence. That is an entirely new claim. There is nothing in the proceedings previous to that which addressed that claim, and that's why nothing on the merits had occurred with respect to that claim. They are essentially bringing something new. Are there further questions? No. I did want to make two points. Go ahead. Give the other side time. Quickly. I will be quickly, but there was some interest in the ex post facto, and the state has said nothing about the ex post facto point. I just want to supplement the brief in two respects. One is with regard to whether someone was eligible for good time credits previously because the way Michigan law is a bit of a complex, but I will get right to the numbers. In 1998, Michigan eliminated the time credits and disciplinary credits. We had truth in sentencing. It was a big change. At the point at which, well, I will take one further step back. I'm sorry. I'm trying to move through quickly, and I do talk quickly, but I will slow down a little just to get through it in a proper way. Under Michigan law, there was a statute that essentially said, every convict who shall have no infraction of the rules of the prison that the laws of the state record against him shall be entitled to and receive a reduction from his sentence. The suggestion is that applied to all offenders, even the offenders who didn't have a minimum sentence. The Michigan Supreme Court said no. The question of good time applies only to those where the date of expiration is fixed. That's Myers v. Jackson's majority decision, 224 N.W. 2nd, 692 A. Page 693. We didn't cite it. I said it quickly, but I know you can get it. Your answer to this question is basically that this can be raised in the state courts, and the Supreme Court of Michigan will, in the end, decide the nature of the good time credits and so on. I think that's true. I think there's also a heck of a problem with respect to that close factor, but I'm trying to build out the record a little because on the merits of the point. Judge O'Meara resolved it on the merits. He said the very thing that Judge O'Meara used to have in your first question. Isn't this a better position for them to have, going from life without parole to a term of years? And that's the way Judge O'Meara evaluated it. I think that's exactly right. There's been no disadvantage. I think that's the right answer. But part of what the plaintiffs have said is they said we have the wrong baseline. The baseline is not life without parole because that's mandatorily imposed because that is a void sentence that's unconstitutional. So the question is if you look term of years as the baseline, then they have been disadvantaged. And here's the other piece in which I think the court needs as a supplemental matter to understand what the baseline was at the time which the legislature stepped in and created this scheme in March of 2014. In November of 2012, the People v. Park decision came down from the Michigan Court of Appeals, and that's a site of 828 Northwest 2nd, 685. And the Michigan Court of Appeals said the right way to resolve this matter is to have a sentencing court make a determination of either life with parole or life without parole. In the absence of a legislative fix as of November 2012, all of those offenders were going to get life with parole or life without parole for which good time credits would be inapplicable or irrelevant. That's the baseline. The suggestion that they in some theoretical way had good time credits and always could have them even though they were going to get a sentence that didn't have a minimum term. It's unambiguous that in the absence of a minimum term, good time credits have no practical value. They have no significance. Michigan Supreme Court then had not ruled, although it took the Karp case and made a decision regarding retroactivity, and that was the issue before the court. It did not resolve this issue, but the controlling law in Michigan, in the absence of a legislative fix, was that all these offenders would either get life with parole or life without parole. So when the legislature stepped in and created a 25 to 40 to 60-year sentence, they did with an idea of there had been a legislative back and forth. The prosecutors wanted 30 years on the minimum. One of the things the legislature did is it took 25 to 40, pulled that minimum down. The prosecutors didn't oppose once. There was an elimination of the opportunity for good time credits because in the absence of the statute, if there were, then all the law defaults. So in the absence of that default, there was no entitlement in the position of the Attorney General, but even if somehow there was this theoretical entitlement, nevertheless their position was accommodated and was improved because they then received a term of your sentence in the face of a life with or life without parole. I think your opposing counsel has an answer to that, and perhaps it's her turn to give it. Thank you, Anna. Thank you. Thank you, Anna. Just coming back for one moment on the categorical issue because I think when the court asked about the timing issue, I think one of the best issue on timing is the Younger rule that it doesn't apply, Younger doesn't apply the abstention, if substantial proceedings on the merits have already taken place. I think that I understand that Mr. Estuchio has not been on this case from the beginning, but I have, Your Honor. And we've done discovery, we've done up and down, we've had five decisions from this court based on both our original complaint, which simply our original complaint was J.L. Watson constitutional, and the remedy and we are entitled to meaningful opportunity for release. It's still our claim today. And it's true that the landscape has changed. Originally, because our clients had a sentence, we challenged the parole statute that prohibited them from a meaningful opportunity for review. Now they don't have a sentence. And so we're challenging a future imposition of life without parole, and under the parole statutes, we're seeking a meaningful opportunity for release for those with a term of years. We're not challenging the 60 years, but what we're saying is all we're saying is 60 is a de facto life. And so in order to not have another imposition of a life without possibility of parole, you have to have a parole system that provides a meaningful and realistic opportunity for life, for release. That's Wersch, that's Wilkerson, and that should be remanded. The other issues that have been raised go to the merits of it, and we should have an opportunity to address that at the court below. I think that with regard to, again, I think that we've had substantial activities with regard to the categorical, and I think that we should be able to return to the court for prompt decision on the constitutionality of that rather than this court hold its hand. I understand federalism, but there has to be something wrong with allowing a state to go through all the machinations that it has since we filed this seven years ago, putting in delays, asking for abstention, filing new legislation, adding in codicils, putting every block they can, and then say, younger, you know, we're now moving down here, even though he couldn't, no one could tell us here today and couldn't tell this court, tell me a date when 250 people will have an opportunity to demonstrate, as this court said, I looked at your prior decision, and I remember you said at the very end that plaintiffs must be given an opportunity to show their crime did not reflect irreparable corruption, and if it did not, their hope for some years of life outside prison walls must be restored. And then you remanded it, and now they have, by manipulating and saying, counsel didn't ask, how could 250 be the rarest? The other exception to younger is bad faith. How do you hang those people up there for years and then say, younger, they're in limbo, but this court should hold its hand and not make a decision about what potentially is an unconstitutional sentence. If the court says it's not unconstitutional, okay, my clients will sit there and hopefully survive and be able to get that opportunity someday, but why wait? We've been arguing this for seven years. Let us present the merits of that case. Please recount your response to the argument about good time credits, the ex post facto claim. So good time credits are given by statute, and everyone has accumulated them, and that's why the legislature had a thing saying we're not going to give them to you because they know that you accumulate them, and the Michigan Supreme Court case of Moore v. Parole Board talked specifically about that. Of course they accumulate them, and the legislature thought it would be good for people to have hope that someday they would be applied. If our clients get a life without parole sentence, of course it doesn't apply. It only applies and is only an ex post facto violation for those individuals who got term years, and so it doesn't have to have been vested. They had it in the bank. I would be horrified if because I didn't access my 501K, the bank said, well, I can take it because you haven't taken it yet and you've delayed too long. Now at a certain point, I get it. At a certain point, they're entitled to it. And they're disadvantaged by not having it. There are only two questions. Is it retrospective? Did they take away what they had? Yes. And does it disadvantage them? Of course it does. That was the whole intent of it. It was, you know, and I'm not going to get into all of the hearings that I sat into as to how the legislature was doing this. It's a vindictive piece of legislation. It took away only for the people who were very good. There are opportunities to see the parole board earlier. Do you have any further argument for the court? Pardon? Do you have any further argument for the court? No, Your Honor. We're just requesting that the count two, four, count two, four, and six be remanded for determination on the merits and that this court reverse the district court on the expulse factor. Thank you. Thank you both counselors. Good argument. Good briefing. We appreciate your work on this case. It will be taken under advisement and we'll be getting back to you, I hope, more quickly than the justice you've been rendered to date. Thank you. Thank you. You may dismiss the court. The Honorable Court is now adjourned.